**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JAMES KENNEDY, BESA KENNEDY** | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | **No. 3:19-CV-260 (VLB)** |
| | : | |
| **FREDERICK CARUSO ET AL.,** | : | |
| *Defendants.* | : | **March 30, 2020** |

**ORDER AND RULINg ON MOTION TO DISMISS [DKT. 23]**

*Pro se* Plaintiffs James Kennedy ("Mr. Kennedy") and Besa Kennedy ("Mrs. Kennedy") (collectively, "Plaintiffs") sue Defendants Detective Frederick Caruso, Detective Frederick Hine, the Town of Fairfield, and Carmina Hirsch (collectively "Defendants"). [Dkt. 1].

Now pending before the Court is Defendant Carmina Hirsch's ("Attorney Hirsch") Motion to Dismiss on the grounds that the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted. [Dkt. 23]. Specifically, Attorney Hirsch raises three arguments: that she is entitled to absolute immunity for her conduct as the Guardian ad Litem for Mr. Kennedy's minor children; that Mrs. Kennedy lacks standing; and that Attorney Hirsch is not a state actor, so is not liable under § 1983, and any remaining state claims should be remanded to state court. [Dkt. 23]. The Plaintiffs respond to each claim. [Dkt. 29]. Attorney Hirsch replies. [Dkt. 34]. For the reasons set forth below, the Court grants the motion in part and denies the motion in part.

**I.   Relevant Factual Background**

1

The following facts are taken from Plaintiffs' complaint and are accepted as true for purposes of this motion.

Mr. Kennedy has two minor children with his ex-wife, Fatima De Almeida-Kennedy ("Ms. De Almeida-Kennedy"), and has been engaged a long-running custody dispute with her. *See generally* [Dkt. 1]. On March 10, 2016, the Court appointed Attorney Hirsch as guardian ad litem for the minor Kennedy children in connection with a Motion to Modify filed by Mr. Kennedy, and she has served as guardian ad litem since. *Id.* at ¶¶187-188.

Kennedy alleges that Attorney Hirsch engaged in a series of improprieties. In November of 2017, Attorney Hirsch told Mr. Kennedy's children that Mr. Kennedy has a criminal record. *Id.* at ¶ 497. On November 8, 2017, Hirsch falsely represented to the custody court that Mr. Kennedy was a criminal who would kidnap his minor children if given the opportunity. *Id.* at ¶¶ 224, 539-40. The Court relied on this representation and suspended Mr. Kennedy's right to see the children outside of Connecticut. *Id.* at ¶ 225.

Between April 17, 2018 and May 1, 2018, Ms. De Almeida-Kennedy relocated to Tennessee with the children. *Id.* at ¶¶ 227-28. That May, Attorney Hirsch agreed to an indefinite continuance filed by Ms. De Almeida-Kennedy of the hearing of Mr. Kennedy's motion to remove the restrictions on his access to his children. *Id.* at ¶¶ 226-31, 542-47. Attorney Hirsch made no attempts to re-schedule the hearing and opposed Mr. Kennedy's second and third attempts to get a hearing in September and October of 2018. *Id.* at ¶¶ 548-54.

On October 23, 2018, Mr. Kennedy attended a hearing wherein no motions were heard. *Id.* at ¶ 236. Attorney Hirsch was also there. *Id.* Attorney Hirsch told a Family Relations caseworker that Mr. Kennedy "kidnapped his children." *Id.* at ¶ 498.

On November 27, 2018, the Bridgeport Superior Court issued an Ex Parte Order granting temporary sole legal custody to Mr. Kennedy. *Id.* at ¶¶ 239-242. Ms. De Almeida-Kennedy and Attorney Hirsch received notice of the Ex Parte Order that day and an actual copy of the Ex Parte Order on November 28, 2018, the next day. *Id.* at ¶ 242. Attorney Hirsch filed a request for a Status Conference with Bridgeport Superior Court on November 28, 2018 and was notified the next day that her status conference request would not be heard until December 11, 2018. *Id.* at ¶ 275. Attorney Hirsch did not instruct Ms. De Almeida-Kennedy to comply with the Ex Parte Order. *Id.* at ¶ 274.

On Thursday, November 29, 2018, Ms. De Almeida-Kennedy filed an Ex Parte Motion. *Id.* at ¶ 288. She provided a copy to Hirsch. *Id.* Her motion was denied and Hirsch received notification of the denial. *Id.* The same day, Mr. Kennedy contacted the Fairfield Police Department to ask for assistance in returning his children to Connecticut and let Detective Frederick Caruso ("Detective Caruso") know about the Ex Parte Order. *Id.* at ¶ 285.

On December 3, 2018, Attorney Hirsch contacted De Almeida-Kennedy and the minor children without notifying or obtaining Mr. Kennedy's consent. *Id.* at ¶ 639. Attorney Hirsch told Mr. Kennedy's children that she had no authority nor power to step in, that a hearing was set for December 11, and that the court's orders were

3

in place until a hearing where the court will make further decisions. *Id.* at ¶ 349. Immediately after the contact, the minor children told Plaintiffs they did not want to talk, and did not speak with them until January 16, 2019. Compl. ¶¶ 345-347.

The next day, on December 4, 2018, Attorney Hirsch contacted Tennessee public schools without Mr. Kennedy's knowledge or consent, and sent them documents indicating that she had authority to speak for the Court in Connecticut as guardian ad litem, when she did not have authority, power, or duty to step in. *Id. at* ¶ 352.

Attorney Hirsch and Detectvie Caruso agreed to generate and distribute a police report with stigmatizing, false content. *Id.* at ¶¶ 559-60. They agreed to influence tribunals in two states not to enforce the granted Ex Parte Order, to prevent Mr. Kennedy from prevailing at future hearings, and to prevent Mr. Kennedy from having any direct contact with the minor children. *Id.* at 561-568.

On December 4, 2018, Detective Caruso wrote an incident report ("Incident Report"), which contained a number of false statements. *Id.* at ¶¶ 351-82. He discussed the report with Hirsch, and, in it, he wrote that he was sending it to Attorney Hirsch. *Id.* at ¶¶ 445, 573. Attorney Hirsch knew that the statements were false. *Id.* at ¶¶ 351-82. Detective Caruso sought and received his supervisor's approval of the report. *Id.* at ¶ 383. On December 6, Detective Caruso emailed a copy of the Incident Report to Attorney Hirsch. *Id.* at ¶ 384. The same day, Attorney Hirsch distributed the Incident Report to five members of the Tennessee schools, including their legal counsel. *Id.* at ¶ 391. She also sent the report to De Almeida-

Kennedy. *Id.* at ¶ 452. Attorney Hirsch intended to introduce the report into evidence on December 11. *Id.* at ¶ 394.

On December 11, 2018, no hearing took place. *Id.* at ¶ 696. Attorney Hirsch told that court that Mr. Kennedy posed a danger to his children, and that Detective Caruso was there to testify to that effect. *Id.* at 399. The court then "froze" the Ex Parte Order granting Mr. Kennedy temporary custody pending an evidentiary hearing which has not taken place. *Id.* at ¶ 401-02. Later, the court caseflow office let Attorney Hirsch know that the hearing would be delayed, and she rescheduled the hearing to no earlier than May 1, 2019, saying that she was not available in March or most of April. *Id.* at ¶ 532. She did not consult Mr. Kennedy before doing so. *Id.* at ¶ 533.

On January 16, 2019 Attorney Hirsch told a Family Services coordinator that Mr. Kennedy had "kidnapped his children" and was potentially subject to federal prosecution. *Id.* at ¶¶ 457, 506, 527. She also referenced the Incident report and ratified its truthfulness to the same Family Services caseworker, thus republishing the statements contained in that report. *Id.* at ¶ 506.

## II.   Relevant Procedural Background

Plaintiffs sue Attorney Hirsch under 42 U.S.C. § 1983 for First Amendment Retaliation, Stigma-Plus Defamation, Fourteenth Amendment Procedural Due Process, Conspiracy, Fourteenth Amendment Selective Enforcement, Conspiracy, and other violations of the First, Ninth, and Fourteenth Amendments. *Id.* at §§ I, J, L, M, N, O, and P. Plaintiffs also sue Attorney Hirsch for common law conspiracy to interfere with custodial relations and common law invasion of privacy. *Id.* at § R,

5

**S. For the purposes of this motion, Plaintiffs claims can be summarized as being based on four different kinds of actions by Attorney Hirsch**

1. Claims based on Attorney Hirsch's statements to the court, and positions on court scheduling matters;
2. Claims based on Attorney Hirsch's agreement with Detective Caruso to write the Incident Report and distribution of the Incident Report to non-court third-parties;
3. Claims based on Attorney Hirsch's statements to the Family Relations coordinators; and
4. Claims based on Attorney Hirsch's statements to Mr. Kennedy's minor children.

III. <u>Legal Standard</u>

A. <u>*Motions to Dismiss Under Rule 12(b)(1)*</u>

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "If the court determines that… it lacks subject matter jurisdiction, the court must dismiss the action." *See* Fed. R. Civ. P. 12(h)(3). A Rule 12(b)(1) motion tests the court's subject-matter jurisdiction to hear a claim or case. Fed. R. Cvi. P. 12(b)(1).  A "district court must take all uncontroverted facts in the complaint… as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). But "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Ibid*. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists." *Ibid*.

B. <u>*Motions to Dismiss Pursuant to Rule 12(b)(6)*</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Ibid.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Ibid.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had

7

knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Plaintiffs represent themselves. Mr. Kennedy is a lawyer, and "a lawyer representing himself ordinarily receives no… solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases).

IV.    Analysis

A. Immunity as guardian ad litem

A    ttorney Hirsch argues that all of the actions about which Plaintiffs complain relate to her role as a guardian ad litem, and therefore, she is protected by absolute immunity for them. [Dkt. 23 at 9-12]. Plaintiffs respond that, because Attorney Hirsch's actions were outside of her duties as guardian ad litem, she is not entitled to immunity from suit. [Dkt. 29 at 13-24].

Guardians ad litem are entitled to absolute  quasi-judicial immunity for actions "integral to the judicial process," such as "testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court," or other functions "in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality. *Carrubba v. Moskowitz*, 877 A.2d 773, 784 (Conn. 2005) (analyzing attorney representing minor child)[1] ; *Dubinsky v. Reich*, 201 A.3d 1153, 1157 (Conn. App. 2019) (applying

---

[1] **The parties do not distinguish between immunity under state law and immunity under federal law. The Second Circuit has issued conflicting opinions about whether federal courts should analyze quasi-judicial immunity for guardians ad litem separately for federal and state law claims or not.** *See Lewittes v. Lobis*, **164 F. App'x 97, 98 (2d Cir. 2006) (Summary Opinion) (citing only to New York state law**

*Carrubba* to role of guardian ad litem), *cert. denied*, 204 A.3d 1159 (Mem.) (Conn. 2019). Actions of guardians ad litem are integral to the judicial process because "the duty of a guardian ad litem to secure the best interests of the minor children places the guardian squarely within the judicial process to accomplish that goal." *Carubba*, 877 A.2d at 784 (quoting *Kurzawa v. Mueller*, 732 F.2d 1456, 157-58 (6th Cir. 1984)).

Further, guardian as litems are entitled to immunity for such integral actions because they are appointed to intercede in one of the most personal and emotionally-charged matters of human existence: parenting disputes. "A grant of absolute immunity is both appropriate and necessary in order to ensure that the guardian will be able to 'function without the worry of possible later harassment and intimidation from dissatisfied parents.'" *Id.* (quoting *Kurzawa*, 732 F.2d at 158). "Without immunity, guardians ad litem would act like litigation lightning rods," which might both "interfere with the independent decision making requirement by this position [and] very well deter qualified individuals from accepting the appointment in the first instance." *Id.* at 784, 782 (quoting *Short v. Short*, 730 F.

---

in holding that "whether as a 'law guardian' or a guardian ad litem, Burros and his firm are also entitled to quasi-judicial immunity' against constitutional claims); *but see Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) ("The issue of immunity… differs as between the state and federal law claims."). Because there is no binding federal precedent on immunity for guardians ad litem in this Circuit, any federal law would be attuned to the nuances of the Connecticut definition of a guardian ad litem, and Connecticut law on immunity for guardians ad litem follows persuasive federal law, *see Carrubba*, 877 A.2d at 784 (quoting and adopting language from *Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989)), the Court here looks to Connecticut law on immunity for guardians ad litem.

Supp. 1047, 1039 (D. Colo. 1990))). Finally, "there exist sufficient procedural safeguards in the system to protect against improper conduct by" a guardian ad litem because she is appointed, supervised and may be removed by the court and because she is subject to discipline for violations of the Code of Professional Conduct. *Id.* at 781–82 (analyzing role of attorney for the minor child).

Where an individual has absolute immunity, a plaintiff's claim that her actions were done "in an intentional, rather than merely negligent manner, does not defeat absolute immunity." *Id.* at 784. Absolute immunity is not be available, however, when persons who would normally be accorded immunity "perform acts which are clearly outside the scope of their jurisdiction." *Carubba*, 877 A.2d at 782. (quoting *Cok v. Cosentino,* 876 F.2d 1, 3 (1st Cir.1989)). The question here is then whether the actions of Attorney Hirsch at issue here are "integral to the judicial process." The Court considers each set of Attorney Hirsch's actions in turn.

First, it is evident that Attorney Hirsch is entitled to immunity for all of her actions connected to court proceedings: her testimony to the family court, any other statements or recommendations to the court, her motions for or opposing hearings, and her motions for or opposing hearing continuances. These actions are integral to the judicial process. *See Carruba*, 274 Conn. at 784 (finding court-appointed attorney was entitled to absolute immunity against claim that she "made negligent and reckless misrepresentations about the plaintiff to the court on various occasions").

Plaintiffs argue that, because prosecutors, also usually entitled to quasi-judicial immunity, do not receive immunity for testifying about facts, and may be

10

liable for fabricating evidence, Attorney Hirsch is not entitled to immunity for her testimony. [Dkt. 29 at 18-19] (citing *Kalina v. Fletcher*, 522 U.S. 118 (1997); *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009); *Liffiton v. Keuker*, 850 F.2d 73 (2d Cir. 1988); *Buckler v. Fitzsimmons*, 509 U.S. 259 (1953); *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995); *Watson v. Grady,* No. 09-CV-3055, 2010 WL 3835047 (S.D.N.Y. Sept. 30, 2010). The Court is not persuaded. Prosecutors are "integral to judicial process" in a very different way than that in which guardians ad litem are:  a guardian ad litem is integral as *both* an investigator of and an advocate for the child's best interests, while a prosecutor's role is limited to advocacy.  *Compare* State of Connecticut Judicial Branch, <u>Code of Conduct for Counsel for the Minor Child and Guardian Ad Litem</u> ("Code of Conduct") (2020)[2] 1.(b)(i), (v) ("A [guardian ad litem] shall identify and communicate to the court the best interests of the child…." and "if the [guardian ad litem] is an attorney, he or she acts in the capacity of a guardian, rather than as an attorney, and the information he or she receives is not subject to attorney-client confidentiality"), *with Kalina*, 522 U.S. at 129 (prosecutor was an advocate and she was not immune because "she was acting as a complaining witness rather than a lawyer when she executed the certification "[u]nder penalty of perjury.").

Plaintiffs' claims regarding Attorney Hirsch's testimony to the court and delays in scheduling are dismissed. Thus, the Court dismisses the Section N

---

[2] **Available at https://www.jud.ct.gov/family/GAL_code.pdf .**

claims against Hirsch, and Sections M and P to the extent that those claims are based on Attorney Hirsch's conduct in court.

Next, the Court considers whether Attorney Hirsch is entitled to immunity for allegedly agreeing with Detective Caruso to distribute a police incident report with false statements, and then distributing the report to non-parties, including the legal counsel for the minor children's Tennessee school.

One Connecticut court has considered this issue. In *Janicki v. Subbloie*, 31 Conn. L. Rptr. 626 (Conn. Sup. 2002), a Connecticut Superior Court held that a guardian ad litem was absolutely immune for her actions in writing a letter to plaintiff's minor child's school stating that the plaintiff was not entitled to have access to his daughter's records and reporting to the Wallingford Police Department and the Family and Children's Aid of Danbury that the plaintiff had threatened another person with violence, and dismissed the plaintiff's defamation action on that ground. The Court reasoned that the guardian ad litem was entitled to absolute immunity because she was acting in the minor child's best interests, and therefore her action was integrally related to the judicial process, and because the absence of judicial immunity would "deter [guardians ad litem] from acting as advocates for minor children." *Id.* at *4.

In disagreement with the *Janicki* court, this Court finds that Attorney Hirsch acted outside of the scope of her duties to the extent that, as alleged, she distributed a police incident report to non-parties, including the legal counsel for the minor children's Tennessee school, containing statements she knew were false. "A GAL shall not disclose information or participate in the disclosure of

12

information relating to an appointed case to any person who is not a party to the case except as may be contemplated by the scope of the court's order or otherwise specifically provided for by law." Code of Conduct I.(b)(iv). A guardian ad litem has a separate duty to "confer with teachers and other school authorities." State of Connecticut Judicial Branch, <u>JD-FM-227</u>: <u>Orders of Duties and Fees-Counsel or Guardian ad Litem for Minor Child or Children</u> (2015) ("JD-FM-227").[3] But the guardian ad litem's purpose in doing so should be to inform her recommendation to the court, rather than to influence the non-parties with whom she is conferring. *See* Conn. Gen. Stat. § 46b-54(e) (setting out role of guardian ad litem).

To the extent that a guardian ad litem believes that a child is in "imminent danger of serious physical harm" she should "make an immediate report to the court…," rather than take matters into her own hands. Code of Conduct at II.(*l*). The absence of immunity is especially apt where, as here, the guardian ad litem is alleged to have clearly exceeded the scope of her authority by knowingly conveying false information to a third party to contravene a court order.

Liability for these actions will not interfere with the duties of guardians ad litem and will not unduly deter guardians ad litem from accepting appointments because guardians ad litem can avoid liability by simply refraining from knowingly giving false information to third parties.

Taking the allegations in the complaint as true and drawing all reasonable inferences in favor of the Plaintiffs, the Court cannot find that Attorney Hirsch acted inside the scope of her role as a guardian ad litem when she  distributed the

---

[3] Available at https://www.jud.ct.gov/family/family_court_initiatives15.pdf .

Incident Report to non-parties, and so she is not entitled to absolute immunity for that action.

For the same reasons, the Court finds that Attorney Hirsch is not entitled to immunity for her actions in telling a Family Services coordinator that Mr. Kennedy "has a past record" and telling another Family Services coordinator that Mr. Kennedy was "potentially subject to federal prosecution," and otherwise maintaining that Mr. Kennedy had kidnapped his children. While a guardian ad litem has a duty to "confer with Family Services," JD-FM-227, as she has a duty to confer with school authorities, her purpose in doing so is similarly limited. Taking the allegations in the complaint as true and drawing all reasonable inferences in favor of the Plaintiff, the Court cannot find that Attorney Hirsch acted inside the scope of her role as a guardian ad litem when she made statements about Mr. Kennedy to the Family Services coordinator, rather than performing her function of advising the court, and so this Court does not find that she is entitled to absolute immunity for these statements.

Finally, the Court considers whether Attorney Hirsch is entitled to immunity for telling the minor children that Mr. Kennedy "has a past record." When recommending orders to the court, the guardian ad litem "shall consider the best interests of the child" and in doing so shall consider factors including "the informed preferences of the child." Conn. Gen. Stat. § 46B-54; *see* JD-FM227 (including among duties "communicate with the child or children"); Code of Conduct I.(b)(ii) ("A GAL may discuss with the child, in an age and developmentally appropriate manner, the nature of the proceeding and the role and responsibility

14

of the GAL"). Attorney Hirsch had a duty to investigate the minor children's feelings about the past criminal charges against Mr. Kennedy to represent their best interests to the court. Therefore, the Court finds that her statements about Mr. Kennedy to the children were made as part of her integral role, and that she is entitled to immunity for them.

Further, liability for these actions would deter hinder guardians ad litem in their roles as, in the absence of immunity, "dissatisfied parents" would be able litigate the content of guardians' statements to minor children. Plaintiffs argue that, like a prosecutor, Attorney Hirsch is not immune for the action of making statements to third parties outside of the judicial process. [Dkt. 20 at 21]. But, as discussed above, a guardian ad litem's role includes investigative functions that a prosecutor's role does not.  Moreover a guardian ad litem is charged with advancing the best interests of the minor child.  This function cannot be performed without a degree of candor.  Only through age-appropriate frank discussions with the children can a guardian ad litem develop the intimate rapport to earn the trust, understand the feelings and tolerances and assess the needs of the child as she is charged to do.   Plaintiffs' claims regarding Attorney Hirsch's statements to the minor children are dismissed.

### B. *"Standing"*

Attorney Hirsch argues that Ms. Kennedy does not have constitutional standing to sue Attorney Hirsch. [Dkt. 23 at 12-13]. Plaintiffs argue that Mrs. Kennedy does have standing. [Dkt. 29 at 6-7, 23-25]. This argument mis-states the nature of federal constitutional standing. "The presence of one party with standing

is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) *cited by Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007), *citing* U.S. Const. art. III, § 1. Attorney Hirsch does not challenge Mr. Kennedy's standing to sue, and the Court is satisfied that the Article III requirement has been met. The Court finds that the Plaintiffs have standing to sue and the Court has power over the case.

However, the Court interprets Attorney Hirsch's standing argument as an argument that Plaintiffs have failed to state a claim on behalf of Mrs. Kennedy against Attorney Hirsch. The Court agrees. Plaintiffs do not allege that Attorney Hirsch in any way violated *Mrs. Kennedy's* constitutional rights. In support of their claim that they did state a claim against Attorney Hirsch, Plaintiffs cite only paragraph 423 of the complaint. [Dkt. 29 at 6-7, 23-25]. But paragraph 423 only alleges, "as a direct and proximate result of the violation of *his* constitutional rights, plaintiffs suffered general and special damages as alleged in this complaint," referring only to Mr. Kennedy. [Dkt. 1 ¶423] (emphasis added).  Mrs. Kennedy is not the natural or adoptive mother of the children nor do Plaintiffs allege Mrs. Kennedy has parental rights to the Kennedy children by any other means.  As Plaintiffs fail to state and legal basis for her claim, the Court dismisses Mrs. Kennedy's claims against Attorney Hirsch.

C. *§ 1983 State Action*

Attorney Hirsch argues that Plaintiffs cannot state a Section 1983 claim against her because she was not a state actor when acting as a guardian ad litem for the minor children. Plaintiffs argue that, while Attorney Hirsch may be a private

actor, she acted under color of state law when she undertook the actions alleged in Plaintiff's complaint.

To state a plausible claim under 42 U.S.C. § 1983, a plaintiff must set forth facts to establish liability for deprivation "under color of state law," "of any rights, privileges, or immunities secured by the constitution." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted). A plaintiff "must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (citations omitted).  In general, private citizens and entities are not subject to Section 1983 liability. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). "A private entity acts under color of state law for purposes of § 1983 when '(1) the State compelled the conduct (the 'compulsion test'), (2) there is a sufficiently close nexus between the State and the private conduct (the 'close nexus test' or 'joint action test'), or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State (the 'public function test').'" *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted); *see Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). A plaintiff complaining that the actions of a nominally private entity violated her constitutional rights makes this showing by demonstrating that "there is such

a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'  *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (quoting *Brentwood Academy,* 531 U.S. at 295 (2001)).

A guardian ad litem for minor children is not a state actor because, like a public defender, although her role is "supplied…by the state," she "acts according to the best interests of the client with 'no obligation to the mission of the state.'" *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (quoting *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) (per curiam)); *see Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F. Supp. 2d 146, 155 (E.D.N.Y. 2002) (collecting district court cases stating "guardians ad litem, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983.").  Therefore, Plaintiffs only state Section 1983 claims against Attorney Hirsch to the extent that they allege her actions met the compulsion test, the close nexus or joint action test, or the public function test. *McGugan*, 752 F.3d at 229.

Under the "joint action" doctrine, a private actor may be found "to act 'under color of' state law for § 1983 purposes… [if the private party] is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom or policy' shared by the private actor and the police." *Forbes v. City of New York*, No. 05-CV-7331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (citing *Ginsberg v. Healty Car & Truck Leasing , Inc.,* 189 F.3d 268, 272 (2d Cir. 1999)) "A

private actor can only be 'a willful participant in joint activity with the State or its agents' if the two share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014).

For courts in this circuit to find joint action with police officers sufficient to survive a motion to dismiss, a plaintiff must allege either that the private party incited or persuaded the police officers in their "choice of procedure," *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005), or that the private party participated in the fabrication of evidence. *Harrison v. New York*, 95 F. Supp. 3d 293, 322–24 (E.D.N.Y. 2015) (finding joint action alleged where Plaintiff alleged that private party agreed with police "to fabricate evidence for the purpose of effectuating Plaintiff's false arrest"); *Anilao v. Spota*, 774 F. Supp. 2d 457 (E.D.N.Y. 2011) (finding joint action alleged where, but for the "pressure and influence" of the private parties, state actors would not have prosecuted plaintiff); *White v. Moylan*, 554 F.Supp.2d 263, 267 (D. Conn. 2008) (finding joint action alleged where plaintiff alleged that security guards and arresting officer worked in tandem to "fabricate [] a reason to arrest [plaintiff] for shoplifting"); *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) (finding joint action alleged where police arrested the plaintiffs after only speaking with the defendant restaurant owner for twenty minutes). "If a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor." *Anilao* 774 F. Supp. 2d at 498 (E.D.N.Y. 2011). "Alleging merely that a private party regularly interacts with a state actor does not create an inference of agreement to violate a plaintiff's rights." *Fisk v. Letterman*, 401 F.

Supp. 2d at 377. Finally, "a merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)

"As an alternative to the 'joint action' theory, a plaintiff may demonstrate that a private party defendant engaged in "state action" by engaging in a conspiracy with state actors under §1983." *Mercer*, 337 F. Supp. 3d 109, 147 (D. Conn. 2018) (citing *Ciambriello v. Cty. Of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)). To do so, a plaintiff must allege, "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct" or "details of time and place." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).[4]

The Court begins by considering Plaintiffs' claims based on Hirsch's alleged agreement with Caruso to write a false statement and distribute it to non-parties. Plaintiffs allege that Attorney Hirsch and Detective Caruso agreed to write and

---

[4] While at least one Southern District case holds that a plaintiff "is not required to list the place and date of defendants'' meetings and the summary of their conversation when he pleads conspiracy," it draws that proposition from a Ninth Circuit case, precedent that is unpersuasive in the face of the on-point *Ciambriello*. *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (citing *Hoffman v. Halden,* 268 F.2d 280, 294–95 (9th Cir.1959)).

distribute a police report, the Incident Report, with false and stigmatizing content. [Dkt. 1 at ¶¶ 559-69]. Detective Caruso drafted the Incident Report in early December 2018.[5] [Dkt. 1 at ¶351]. The Incident Report contained statements that Detective Caruso, and, more relevantly to this motion, Attorney Hirsch knew were false. [Dkt. 1 at ¶¶ 354-382]. On December 6, 2018, Detective Caruso emailed the Incident Report to Attorney Hirsch. [Dkt. 1 at ¶ 384] Attorney Hirsch then distributed the Incident Report to several non-parties to the custody litigation, including to legal counsel for a Tennessee school district and other administrative officials. [Dkt. 1 at ¶391]. The Court now considers whether Plaintiffs' allegations suffice to allege joint action, conspiracy, or the undertaking of an exclusive public function (Plaintiffs do not argue that their allegations suffice to allege state compulsion).

These allegations are not sufficient to allege joint action since there is no allegation that Attorney Hirsch persuaded Detective Caruso to write a false report or collaborated with him in the writing of a false report. Nor do Plaintiffs allege any other procedural irregularities—indeed, Plaintiffs allege that Detective Caruso sought and received his supervisor's approval of his report before release. [Dkt. 1 at ¶ 383]. While the Complaint alleges agreements between Detective Caruso and Attorney Hirsch, the allegations are conclusory and do not go so far as to suggest that Detective Caruso's actions in writing the report were all taken on anything

---

[5] In their Opposition to the Motion to Dismiss, Plaintiffs recharacterize this paragraph as asserting that "Defendant Caruso and Defendant Hirsch, without consulting with Plaintiffs, drafted an incident report." [Dkt. 29 at 29] (citing Dkt. 1 at ¶351). In fact, that paragraph does not mention Attorney Hirsch at all. Similarly, Plaintiffs characterize paragraphs 275, 294, and 378 as alleging cooperative action between Detective Caruso and Attorney Hirsch, but none of those paragraphs mentions both Defendants. [Dkt. 1 at ¶¶ 275, 294, 378].

other than "his own initiative." Plaintiffs' most specific allegation of communication between the defendants—that Attorney Caruso sent the report to Attorney Hirsch, [Dkt. 1 at ¶ 573]—does not suffice to allege an agreement to violate Plaintiffs' rights because Attorney Hirsch had a separate duty to review police records in the course of her investigation, JD-FM-227. *Compare Fisk*, 401 F. Supp. 2d at 377 ("Alleging merely that a private party regularly interacts with a state actor does not create an inference of agreement to violate a plaintiff's rights."), *with Brentwood*, 531 U.S. at 301 (finding "winks and nods" sufficient to establish joint action given previous explicit recognition of state control and ongoing de facto state control). And, the fact that Attorney Hirsch then distributed Caruso's report to Tennessee non-parties is not "joint action with the State" any more than a car accident victim's distribution of the police's accident report to his attorney is joint action with the state. *See* Conn. Gen. Stat. § 29-10b (private parties may request and receive police reports, for a fee).

The Court next considers whether Plaintiffs sufficiently allege conspiracy. They do. Plaintiffs allege that there was an agreement between Detective Caruso and Attorney Hirsch. [Dkt. 1 at ¶¶ 559-60]. They allege that the agreement was to act in concert to inflict an unconstitutional injury, namely, for Detective Caruso to write a report full of false statements to be distributed by Attorney Hirsch in order to stigmatize Mr. Kennedy and prevent him from having contact with his children. *Id.* Finally, Plaintiffs allege several specific overt actions done in furtherance of that goal, including Detective Caruso's December 6, 2018 emailing of the report to Attorney Hirsch,  *id.* at ¶ 600, and Attorney Hirsch's December 6, 2018  distribution

of the report, *id.* at ¶ 391.   Therefore, the Court finds that the allegations are sufficient to allege that Attorney Hirsch engaged in "state action" by engaging in a conspiracy with state actors under § 1983 that encompassed her distribution of the Incident Report to non-parties.

Next, the Court considers Attorney Hirsch's statements to the Family Relations coordinators outside of her discussion of the Incident Report. Where Attorney Hirsch made false statements to the Family Relations coordinators, the Court agrees that she was not acting in her role as Guardian ad litem, *id.* § iv, but neither was her conduct compelled by the State, entwined with the State's, or an exclusive prerogative by the State. Plaintiffs argue that, in "making these false statements to third parties and asserting her knowledge as GAL of these facts," Attorney Hirsch "took on an administrative role which is closely entwined with the state." [Dkt. 29 at 34]. On the contrary, as discussed above, a guardian ad litem is not a state actor, and spreading false rumors about someone's criminal history does not transform a person into a state actor. Therefore, the Court finds that the Plaintiffs have failed to allege that Attorney Hirsch was acting "under color of state law" when she made these comments, and dismisses the § 1983 claims against her to the extent that they rely on her statements to the Family Relations caseworkers.

V.   **Conclusion**

First, the Court finds that Attorney Hirsch has absolute immunity for her interactions with the Court. Therefore, the Court dismisses all claims brought under Section N of the complaint, and dismisses the claims in Sections M and P to the extent that they are based on her actions regarding the Court. The Court also

finds that Attorney Hirsch has absolute immunity for her statements to the minor children, and dismisses the Complaint's claims to the extent that they rely on those statements. However, the Court finds that Attorney Hirsch does not have immunity for her statements to the Family Relations coordinators or for her distribution of the Incident Report to non-parties.

Next, the Court finds that Plaintiffs have failed to state any claim by Mrs. Kennedy against Attorney Hirsch, and dismisses Mrs. Kennedy's claims against Attorney Hirsch.

Next, the Court finds that Attorney Hirsch was acting as a private citizen when she discussed Mr. Kennedy with the Family Relations coordinators without referencing the Incident Report. The Court therefore dismisses the § 1983 claims against her to the extent that they rely on those statements.

Finally, the Court finds that the Plaintiffs have adequately pleaded that Attorney Hirsch acted under color of state law in her communication of the Incident Report to non-parties because she conspired with a state actor.

Therefore, the Court DENIES the motion to dismiss as to Mr. Kennedy's federal and state law claims against Attorney Hirsch premised on her distribution of the Incident Report to non-parties. In addition, Mr. Kennedy's state law claims premised on Attorney Hirsch's distribution of the Incident Report and her statements to the Family Relations coordinators and others regarding Mr. Kennedy's "kidnapping" of his children and possible federal prosecution survive,

24

as Attorney Hirsch does not have immunity against them. The Court otherwise GRANTS the motion to dismiss.

SO ORDERED this 30th day of March 2020 at Hartford, Connecticut.

_____/s/_____

VANESSA L. BRYANT

UNITED STATES DISTRICT JUDGE