UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES KENNEDY, BESA KENNEDY<br>*Plaintiffs*, | : <br> : <br> : | |
| v. | : | No. 3:19-CV-260 (VLB) |
| | : | |
| FREDERICK CARUSO ET AL.,<br>*Defendants*. | : <br> : <br> : | March 30, 2020 |

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 35]

*Pro se* Plaintiffs James Kennedy ("Mr. Kennedy") and Besa Kennedy ("Mrs. Kennedy") (collectively, "Plaintiffs") sue Defendants Detective Frederick Caruso, Detective Frederick Hine, the Town of Fairfield, and Carmina Hirsch (collectively "Defendants"). [Dkt. 1].

Now pending before the Court is Defendant Carmina Hirsch's ("Attorney Hirsch") Motion for Partial Summary Judgment as to Mr. Kennedy's "stigma-plus" defamation claim against her, [Dkt. 1 at ¶¶ 497-513], on the grounds that Mr. Kennedy has failed to show that Attorney Hirsch made a false statement regarding his 2009 arrest. [Dkts. 35 (Mot. for Summ. J.), 36 (Mem. Supp. Mot. for Summ. J.), 37 (56(a)(1) Statement of Material Facts); 39 (Hirsch Aff.); 40 (Def. Exs.)]. Plaintiffs respond. [Dkts. 42 (Mem. Opp. Mot. Summ. J.), 43 (56(a)(2) Statement of Material Facts), 44 (8/8/2018 James Kennedy Aff.), 45 (Pl. Ex.)]. Attorney Hirsch replies. [Dkt. 46]. For the reasons that follow, the Court GRANTS in part and DENIES in part the claim.

### I. Standard of Review

1

**Summary judgment should be granted "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).**

**"In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."** *Tolan v. Cotton*, **572 U.S. 650, 651 (2014) (quoting** *Anderson*, **477 U.S. at 255)). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."** *Anderson*, **477 U.S. at 255;** *see Hayes v. New York City Dep't of Corrs.*, **84 F.3d 614, 619 (2d Cir 1996).**

**Fed. R. Civ. P. 56(c) governs the type of evidence that may support a motion for summary judgment:**

> **(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:**
>
> > **(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or**
> >
> > **(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.**

2

> **(2) *Objection That a Fact Is Not Supported by Admissible Evidence*.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence….
>
> **(4) *Affidavits or Declarations*.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1). "Any evidence considered on summary judgment must be reducible to admissible form." *Figueroa v. Mazza*, 825 F.3d 89, 99 n. 8 (2d Cir. 2016); *see Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) ("At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible."). Where a defendant presents admissible evidence tending to show there is no genuine issue of material fact for a jury to decide and she is entitled to judgment as a matter of law, a plaintiff must produce admissible evidence raising a genuine issue of material fact to defeat summary judgment. Fed. R. Civ. P. 56(c).

A party's own affidavit may be enough to fend off summary judgment if it is based on personal knowledge and is consistent with prior pleadings and testimony. *See Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 53 (2d Cir. 1998) (reversing district court grant of summary judgment because district court did not give party's affidavit weight and affidavit was consistent with prior pleadings and testimony); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (same). However, if the affidavit is inconsistent with prior deposition testimony or pleadings, it does not create "a genuine issue for trial." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see Rojas v. Roman Catholic Diocese*

*of Rochester,* 660 F.3d 98, 106 (2d Cir.2011) ("in certain extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim.").

Plaintiffs represent themselves. Mr. Kennedy is a lawyer, and "a lawyer representing himself ordinarily receives no… solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases).

## II. Relevant Background

Mr. Kennedy's stigma-plus defamation claim against Attorney Hirsch alleges that Attorney Hirsch made or republished numerous false statements, some in writing and some verbal.

First, Attorney Hirsch republished an incident report signed by Detective Frederick Caruso on December 6, 2018 (the "Incident Report") which contained a number of allegedly false statements. [Dkt. 1 at ¶¶ 502, 496, 506]; [Dkt. 37 (Hirsch Statement of Facts) at ¶ 11]. The allegedly false statements included:

- "Mr. Kennedy was arrested in August of 2009 because he cleared out his house of all belongings while still married to Ms. [De Almeida-]Kennedy," which the complaint alleges is "false and stigmatizing" because "Mr. Kennedy has no criminal record, has never been arrested according to Connecticut statute, and the house was not empty upon separation of Mr. Kennedy with [Ms.] De Almeida- Kennedy." *Id.* at ¶ 475.

- "[Mr. Kennedy] then fled Connecticut with both minor children leaving Ms. Kennedy with no usable cell phone, no vehicle and no idea where either of her two minor children were." *Id.* at ¶ 476. Plaintiffs argue that this was false and stigmatizing because: " No one fled Connecticut. The home was about to go into foreclosure and a move had been planned. There was a vehicle left, [Ms.] De Almeida-Kennedy had two cell phones, and she [knew] where the children were." *Ibid.*

4

- Statements about Mr. Kennedy's custody and visitation rights. *Id.* at ¶¶ 471-74.

- Statements about Mr. Kennedy's parents' opinion of his character and parenting skills. *Id.* at ¶¶478, 483.

- Statements about Mr. Kennedy's payment of child support. *Id.* at ¶¶481-82.

Second, Mr. Kennedy alleges—though Attorney Hirsch does not admit—that Attorney Hirsch has otherwise made a number of false and stigmatizing verbal statements:

- In November of 2017, Attorney Hirsch told Mr. Kennedy's children that Mr. Kennedy has a past record. *Id.* at ¶ 497.

- On October 27, 2018, Attorney Hirsch told a Family Relations caseworker that Mr. Kennedy "kidnapped his children," and she has told others that he "kidnapped" his children. *Id.* at ¶¶ 498, 501, 506.

### III. <u>Analysis</u>

Attorney Hirsch argues that the Court should grant summary judgment in her favor as to the "stigma-plus" defamation claim because Detective Caruso's discussion of Mr. Kennedy's 2009 arrest in the Incident Report does not amount to stating a falsehood. [Dkt. 36]. Mr. Kennedy responds that his "stigma-plus" defamation count is not limited to claims about the 2009 events, that none of his claims rely on any statements about an arrest, and that Attorney Hirsch cannot rely on the Incident Report to support her motion for summary judgment. [Dkt. 42].

To establish a "stigma-plus" defamation claim, a plaintiff must allege:

(1) the utterance of a statement about [him] that [a] is injurious to [his] reputation, [b] "that is capable of being proved false, and [c] he… claims is false," and (2) "some tangible and material state imposed burden in addition to the stigmatizing statement."

*Velez v. Levy*, 401 F. 3d 75, 87 (2d Cir. 2015) (quoting *Doe v. Dept' of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds, Connecticut Dept. of Public Safety v. Doe*, 536 U.S. 1 (2003)). The "defamatory statement must be sufficiently public to create or threaten a stigma…." *Ibid*. A plaintiff must also allege that the statement was made without due process of law. *Id. Balentine v. Tremblay*, 554 Fed. App'x. 58, 60 (2d Cir. 2014) (Summary Order) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004));

First, the Court agrees with Plaintiffs that, even if Attorney Hirsch establishes that the 2009 events occurred as stated in the Incident Report, she is not entitled to summary judgment on the entirety of the stigma-plus defamation claim. In their complaint, Plaintiffs also allege that the Incident Report contained additional false statements beyond those relating to Mr. Kennedy's arrest, including statements about Mr. Kennedy's custody and visitation rights, his parents' opinion of him, and his payment of child support. [Dkt. 1 at ¶¶ 471-74, 478, 481-83]. Further, Plaintiffs allege that Attorney Hirsch made a number of other verbal false statements about Mr. Kennedy. *Id.* at ¶¶ 498, 501, 506. In her memorandum supporting her motion for partial summary judgment and her 56(a)(1) statement of facts, Attorney Hirsch does not admit to making the verbal statements nor does she address the other allegedly false statements in the Incident Report. *See generally* [Dkts. 36, 37]. Further in her partial summary judgment briefing, Attorney Hirsch does not analyze the truth or falsity of all parts of the allegedly false stigmatizing statements about the 2009 events, such was whether Mr.

Kennedy "cleared out" the house and whether his actions can be characterized as "kidnapping." *See generally* [Dkts. 36, 37].

On the other hand, the Court agrees with Attorney Hirsch that the stigma-plus defamation count does turn in part on whether in 2009 Mr. Kennedy left Connecticut with the children without telling Ms. de Almeida-Kennedy where they were going and whether he was subsequently arrested. *See* [Dkt. 1 at ¶ 475 ("That statement is false and stigmatizing… Mr. Kennedy has never been arrested according to Connecticut statute."), ¶ 476 ("That statement is false and stigmatizing. No one fled Connecticut..., and [Ms. De Almeida-Kennedy] herself told Caruso where the children were")]. Therefore, the Court's decision only addresses whether there is a genuine dispute of material fact as to whether (1) Mr. Kennedy was arrested in 2009 for First Degree Custodial Interference; and (2) Mr. Kennedy left Connecticut with his two children without telling Ms. de Almeida-Kennedy whether they were going while Ms. de Almeida-Kennedy was in France looking for homes.

1. *2009 Arrest*

Attorney Hirsch states that in August 2009, Mr. Kennedy "was arrested and charged with First Degree Interference." [Dkt. 37 at ¶¶ 5-6] (citing Dkt. 40 (Ex. 1, Incident Report) at 2). [1] Plaintiffs object "there are no admissible records that exist

---

[1] In her reply brief, Attorney Hirsch also supports the truth of this statement with a motion filed by Mr. Kennedy attached to his 2018 Emergency Ex Parte Application for Custody. [Dkt. 12 at 6 (citing FBT-FA09- 4030227-S, Entry No. 393.00)]. The Court does not consider this evidence as it was new to the Reply brief and could have been submitted with Attorney Hirsch's original motion. *See*

which would support that statement," but do not otherwise dispute it. [Doc. 43 at ¶ 6]. Therefore, the Court considers whether the Incident Report is an admissible record or demonstrates the existence of an admissible record.

**Connecticut General Statute § 54-142a provides in relevant part:**

> (a)(1) Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased….
>
> (e)(1)…[A]ny law enforcement agency having information contained in such erased records shall not disclose to anyone, except the subject of the record, upon submission pursuant to guidelines prescribed by the Office of the Chief Court Administrator of satisfactory proof of the subject's identity, information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency….

Conn. Gen. Stat. Ann. § 54-142a. The statute restricts law enforcement agencies from disclosing information in its records pertaining to a dismissed charge. It does not say no person shall disclose such information. Consequently it does not restrict any other person or class of persons from disclosing information concerning the arrest or the circumstances surrounding the arrest. Even in cases where an individual's arrest records have been erased, the statute does not bar testimony based on personal knowledge. *See Greenan v. Greenan*, 91 A.3d 909, 916

---

D. Conn. L. Civ. R. 56 (a)(3) (requiring that supporting evidence be submitted *with* the statement of material facts); Fed. R. Civ. P 6(d) ("When a motion is supported by affidavit, the affidavit shall be served with the motion").

(Conn. App. 2014) ("The plaintiff's testimony about his arrest was based on his recollection, independent of erased records and, thus, was not within the scope of § 54–142a."); *State v. Morowitz*, 512 A.2d 175, 182 (1986) ("Because the disputed testimony was based on personal knowledge independent of the erased records, § 54–142a did not bar its admission."); *Hampton v. Manson*, 497 A.2d 1044, 1047 (Conn. App. 1985) (holding that "[n]o useful public purpose would be served by expanding and interpreting the term 'record' as used in our erasure statutes to include the personal knowledge and memory of actual events by police officers" in parole board hearing context); *see also Rado v. Board of Education,* 583 A.2d 102, 107 (Conn. 1990) (§ 54–142a did not bar testimony regarding observation of events where witnesses did not use any record subject to erasure in testifying).

Here, while the Incident Report itself may not be admissible, it shows that Detective Caruso would be competent to testify as to the 2009 arrest that his testimony would not be barred by the erasure statute because he personally witnessed the events. *See* [Dkt. 37 at ¶¶ 5-6] (citing [Dkt. 40]) (Detective Caruso investigated the 2009 incident and made the arrest). The Incident Report is therefore sufficient evidentiary support for purposes of summary judgment. *See* Fed R. Civ. P. 56(c)(4).

Plaintiffs argue that the Incident Report is not admissible evidence because it is a law enforcement record. [Dkt. 42 at 7-8] (citing Conn. Gen. Stat. § 54-142a and *Martin v. Hearst Corp.,* 777 F.3d 546 (2d Circ. 2015)). But in light of the Court's finding that the Incident Report demonstrates the availability of admissible evidence in the form of Detective Caruso's testimony, based on his personal

observations independent of police department records, the Court does not need to reach this issue.

Thus, the Court finds that there is no genuine dispute that Mr. Kennedy was arrested and charged with First Degree Interference in 2009.

### 2. *Facts Relating to the 2009 Move to Texas*

Attorney Hirsch states that in August of 2009, while Ms. de Almeida-Kennedy was in France looking at homes, Mr. Kennedy left Connecticut for Texas with his two children without telling Ms. de Almeida-Kennedy that he had the children or where they were going. [Dkt. 37 at ¶¶ 1- 6] (citing Incident Report at 2-4).

In response, Mr. Kennedy gives the following account: In August of 2009, Mr. Kennedy bought an expensive trip for his then-wife, Ms. De Almeida-Kennedy to Cannes, France. [Dkt. 44 (8/8/2019 Mr. Kennedy Aff.) at ¶ 5]. At the time, he had conversations with her about scenarios in which she, him, and their children would move there, and scenarios in which she would move there alone. *Id.* While she was away traveling in France, Mr. Kennedy separated from Ms. De Almeida-Kennedy and took his children to Austin, Texas, which had been "discussed with [Ms. De Almeida-Kennedy] prior; she knew we were moving, just not the physical address where as we had not secured a place." *Id.* at ¶ 6. Mr. Kennedy used a joint bank account to purchase the tickets to Austin, Texas and notified Ms. De Almeida-Kennedy that the children were with him. *Id.* at ¶ 7. He "did not invite her to come stay with us and did not invite her to serve me." *Ibid.*

Taking Mr. Kennedy's evidence as true and drawing all justifiable inferences in his favor, the Court finds that there is no genuine dispute that, in August of 2009, Mr. Kennedy sent Ms. de Almeida-Kennedy to France and while she was in France looking at homes to purchase, Mr. Kennedy instead relocated to Texas with their two minor children without telling her their address. A dispute remains as to whether Ms. de Almeida-Kennedy knew beforehand whether Mr. Kennedy was moving out of Connecticut by himself with the children.[2]

IV. Conclusion

Pursuant to Rule 56(g), the Court states that (1) Mr. Kennedy was arrested and charged with First Degree Interference in 2009, and (2) in August of 2009, while Ms. de Almeida-Kennedy was in France looking at homes, Mr. Kennedy left Connecticut for Texas with his two minor children and did not tell her their address. These facts are established in this case. The Court otherwise DENIES Attorney Hirsch's motion for partial summary judgment.

SO ORDERED this 30th day of March 2020 at Hartford, Connecticut.

/s/
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE

---

[2] The Court notes that Mr. Kennedy's statement that he had conversation with Ms. De Almeida-Kennedy about "scenarios in which she, him , and their children would move [to France]" is in tension with his later statement that Ms. De Almeida-Kennedy "knew [Mr. Kennedy and the children] were moving" to Austin, Texas.